[Civ. No. 17766.  First Dist., Div. One.  Sept. 11, 1958.]

ARLINE CARR, Appellant, v. LLOYD W. DICKEY, Respondent.

Jack H. Werchick for Appellant.

Lamb & Hoge for Respondent.

PETERS, P. J.—Plaintiff, Arline Carr, brought this action against defendant, Lloyd Dickey, a dentist, for malpractice and for an assault and battery. At the close of plaintiff's case the trial court granted defendant's motion for a nonsuit as to both causes of action. Judgment was entered accordingly, and plaintiff appeals.

The case involves the extraction of a tooth of plaintiff by defendant. For purposes of clarity, something should be said about how the teeth involved are indicated in the record. According to the system used by defendant, the lower left wisdom tooth is designated Number 17. That tooth had been extracted by defendant prior to the events here involved. The molar next to the wisdom tooth, the second lower left molar, and the back tooth after the wisdom tooth was removed, is designated as Number 18. The next tooth in front of that, or the first lower left molar, is designated as Number 19.

The complaint alleges, in the malpractice count, that defendant negligently extracted the first lower left molar (No. 19) of plaintiff, a tooth that was sound and perfect, and allowed the second lower left molar (No. 18), a diseased and decayed tooth, to remain in plaintiff's jaw. The assault and battery count charges that defendant was employed by plaintiff to extract a designated tooth but extracted a different one without cause, and without plaintiff's consent.

As already pointed out, the trial court granted a nonsuit as to both counts. In the course of its ruling the court, after reviewing the evidence, stated, in reference to the first count, "I am satisfied that there is no evidence in this case to establish negligence as required by law. . . . There was no negligence shown in the manner of pulling the tooth. . . . The Court cannot find any evidence of negligence whatsoever in the evidence that has been presented . . ." The court also ruled that the assault and battery count could not be sustained "because the action, as testified to by the plaintiff, was taken with her consent . . . she consented to the fact that the tooth be removed."

Tested by the standards applicable to nonsuits, the record shows that these rulings of the trial court were correct.

The defendant is a dentist and oral surgeon. Called as an adverse witness, he testified that he first treated plaintiff in September of 1953. At that time he took full mouth X-rays, and took the patient's dental history, and made a clinical examination of her mouth. He filled three of her teeth. At that time he discovered no reason to treat the lower left molars. On June 10, 1954, plaintiff called at his office and complained of pain in the lower left molar area. Upon examination he found no emergency situation requiring immediate extraction. He took an X-ray of the two lower left molars and discovered a cavity in the back molar (No. 18) which he thought could be filled. He also discovered a radiolucent area

in the first molar (No. 19). The plaintiff complained that both teeth hurt and requested that they be extracted. The doctor told plaintiff to go home to see if the pain became localized. He knew that plaintiff was a constant and chronic complainer of pain, and also knew that it was frequently difficult for a patient to localize the pain. He did not want to extract either of the teeth until he was sure that the pain was of such a type and character that such remedy was required.

A few days later plaintiff returned, complaining that both molars still bothered her. He had carefully examined the X-rays and came to the conclusion that tooth numbered 18 could be saved by filling the cavity, but that Number 19 should be removed. Neither molar was abscessed, but both were diseased. The radiolucent area shown in the X-ray on tooth Number 19 gave all the indications of decay. It was either decay, or a wasting away of the tooth. The condition had just about reached the nerve of the tooth. There was a discoloration in or close to the nerve. A radiolucent area in an X-ray indicates that there is a lesion in the tooth, a wasting away of the tooth, indicating a loss of tooth structure. It can indicate decay or a change in density of the tooth. After re-examining the X-ray he came to the conclusion that plaintiff's pain was coming from tooth Number 19. He based this conclusion upon the fact that the radiolucent area was on the back surface of the tooth, below the gum line in the root of the tooth. When decay reaches the nerve of a tooth, extraction is one remedy. Plaintiff had stated that taking hot or cold substances into her mouth caused pain.

Under these circumstances defendant told the plaintiff that he could fill tooth Number 18 and save that tooth, but advised the removal of Number 19. He showed the patient the X-rays and called her attention to the radiolucent area in tooth Number 19, and pointed out to her how close it was to the pulp. Plaintiff agreed to the suggested procedure. He filled tooth Number 18, and extracted tooth Number 19. He extracted the tooth because of what he had observed from the X-rays and because the symptoms of plaintiff as described by her indicated to him that the nerve of the tooth was involved, and extraction was indicated. He could not remember if his office radio was tuned to the Charles-Marciano fight during the extraction.

The testimony given by plaintiff does not substantially

differ from that given by defendant. She testified that when she visited defendant in June of 1954 she told him that her back teeth were hurting, and that she thought it was the back lower tooth on the left side, which would be tooth Number 18. The doctor examined her mouth, and took some X-rays. Then he told the witness that it was not tooth Number 18 that was hurting, but the tooth next to it, Number 19. Then ''I told him it felt like it was the tooth in the back, I told him, but he is the dentist and he should know.'' She told the doctor that if she ate anything sweet, chewed gum, drank water, or opened her mouth so that the air got in, her tooth would ache. It was not an excrutiating or continuous pain, nor did it keep her awake at night. The doctor told her to come back in a few days. This she did, coming in about 6:30 or 7 p.m. The doctor first took care of the teeth of her child and then brought her into his office. All of the time she was there the radio was on tuned to the Charles-Marciano fight. The doctor first filled several cavities in her front teeth. Then plaintiff asked the defendant about her back tooth, which was the one she thought was hurting, although she was not sure. The defendant took another X-ray and then told her it was not the last molar, but the one next to it, that was giving the trouble. After showing her the X-ray, he recommended that tooth Number 19 should be pulled, and Number 18 should be filled. When asked if she consented to this procedure, she replied: ''Well, I told him he should know.'' Then defendant extracted tooth Number 19. Plaintiff then asked defendant for the extracted tooth. He gave it to her and she took it home. It was introduced into evidence in this case.

After the tooth was extracted the sensitivity and pain continued. About a week after the extraction plaintiff again visited defendant and told him that the condition still persisted. She accused defendant of pulling the wrong tooth and refused to permit him to work on tooth Number 18. Sometime later she went to Dr. Brady, another dentist, showed him the extracted tooth and asked him to extract tooth Number 18. This he did.

The only other witness called by plaintiff was Dr. Brady. He testified that he extracted tooth Number 18 (he used a different numbering system) on June 23, 1954. He first took an X-ray and then determined from it, and the complaints of the patient, that the tooth should be extracted. He found erosion around the gum line leading down toward the nerve. When shown the tooth that defendant had extracted (No. 19)

he stated that it showed "quite a bit of erosion out at the gum line . . . quite a bit of it," and that it had a "gum line cavity." When shown the X-rays of tooth Number 19 he found "quite a bit of decay or erosion" on both the front and back of the tooth, and several radiolucencies. The condition disclosed could be a reason for extraction, depending upon the sensitivity of the patient. He also stated that from the X-rays you cannot tell whether there is decay or erosion unless you examine the tooth and pick at it with an explorer to see if it is soft. By just looking at the tooth that had been pulled he could not tell whether it should have been extracted. From the X-rays, it looked to him as if the tooth had an extensive sensitive area. When asked if, in his opinion, tooth Number 19 should have been extracted, he said: "I would take that tooth out." As far as the X-rays taken by defendant of tooth Number 18 were concerned, they showed a condition that raised a question whether that tooth could be saved.

On this evidence the trial court granted a nonsuit as to both causes of action. Appellant argues that the evidence presented questions of fact which could have been decided by a lay jury without expert evidence and which entitled her to the benefit of the doctrine of res ipsa loquitur. In addition, she asserts, that, independently of that doctrine, the evidence established a prima facie case that the respondent had failed, negligently, to use the requisite standard of care in his treatment of her.

The doctrine of res ipsa loquitur is not applicable to the facts of this case. ▉ In 36 California Jurisprudence 2d page 72, section 337, the proper rule, applicable to malpractice cases, and supported by many cases, is stated as follows: "Medical malpractice cases are an abundant field for application of the doctrine of res ipsa loquitur. Of course, the mere fact that a medical treatment may have been unsuccessful is insufficient to bring the doctrine into operation. It is applicable only where the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised, and where under the evidence the hypothesis that the patient's prior condition was the proximate cause of the accident may be rejected by the trier of fact."

▉ In *Bauer* v. *Otis*, 133 Cal.App.2d 439, 443 [284 P.2d 133], the applicable rules are summarized as follows:

"As a general rule, res ipsa loquitur is applicable where it appears that the accident is of such a nature that it can be said, in the light of past experience, that it *probably* was the

result of negligence by someone and that the defendant is *probably* the person who is responsible. . . .

"The conditions required for the application of the doctrine are: (a) There is a basis of experience, either common to the community or brought out in evidence, from which it may reasonably be concluded that the accident is of a kind which does not normally occur unless someone has been negligent. (b) It must be caused by an agency or instrumentality within the exclusive control of the defendant. (c) It must not have been due to any voluntary action or contribution on the part of the plaintiff. [Citations.]" (For a full review of most of the applicable cases see *Salgo* v. *Leland Stanford etc. Board of Trustees*, 154 Cal.App.2d 560 [317 P.2d 170].)

Tested by these standards the doctrine is not here applicable. There is no evidence at all that plaintiff has suffered any legal injury. There is no evidence that tooth Number 19 was not diseased and should not have been extracted. No subsequent injury followed as a result of the extraction. Plaintiff's evidence is to the effect that tooth Number 19 was extracted after the condition existing was fully explained to her and after she had consented to its removal. The evidence as to tooth Number 18, the tooth respondent filled and that Dr. Brady subsequently removed, is to the effect that it was a matter of reasonable judgment as to whether that tooth should have been extracted or an attempt made to save it by filling it. Respondent, with praiseworthy caution, determined to save that tooth if he could. The fact that Dr. Brady, after the pain continued, decided to remove that tooth is no reason to apply the doctrine of res ipsa loquitur. The appellant admitted that, when she returned to respondent's office after the extraction and complained of continuing pain, she refused to allow him to treat tooth Number 18. Thus, res ipsa loquitur is not applicable to the facts.

Nor does the evidence show that respondent was negligent in any way. Quite to the contrary, the evidence shows that respondent exercised the highest degree of care and skill. There was not one word of testimony that the extracted tooth was a sound tooth. The testimony was to the contrary. Respondent and Dr. Brady both testified that the X-rays of tooth Number 19 showed decay in or a wasting away of the tooth structure below the gum line and leading toward the nerve. The fact that pain continued after the extraction of tooth Number 19 is not evidence that that tooth was negli-

gently removed. Nor does the fact that Dr. Brady subsequently removed tooth Number 18 raise an inference that respondent was negligent in not extracting that tooth. The evidence is uncontradicted that respondent, in the exercise of a sound judgment, felt that the tooth might be saved by filling it. There is not one word of testimony that tooth Number 18 was so diseased that a dentist, acting reasonably, should have known that it had to be extracted.

The theory of appellant was that respondent was so interested in the fight broadcast that he negligently removed tooth Number 19, a sound tooth, when he intended to remove tooth Number 18. The theory sounds good, but the difficulty is that the evidence of appellant and of her witnesses not only does not support it, but is quite to the contrary. There was no mistake in removing tooth Number 19. When appellant first visited respondent to complain of pain in the molar area, respondent, after taking and examining the X-rays, and after visually examining the teeth, told appellant that it was his belief that it was tooth Number 19 causing the trouble, and that that tooth should be removed and tooth Number 18 should be saved. Before the tooth was extracted respondent, according to appellant, carefully explained the X-rays and told her that tooth Number 19 should be extracted. Appellant consented. No mistake was made. What was done was intentionally done, and done with appellant's consent. There is no evidence nor any inference from the evidence to support appellant's theory.

The consent of appellant to the removal of tooth Number 19 was, of course, also a complete legal defense to the assault and battery charge.

Thus, the nonsuit was properly granted as to both charges involved.

The judgment appealed from is affirmed.

Bray, J., and St. Clair, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.